# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BLAIR AND ALS. V. CARTER'S ADM'R AND ALS.

### February 21, 1884.

1. BANKRUPTCY—*Provable debts.*—Under § 5106, U. S. R. Statutes, no suit on provable debt can be prosecuted to judgment against bankrupt until question of his discharge is determined. By leave of bankrupt court, suit may proceed to ascertain amount which ought to be proved therein.

2. IDEM—*Idem—Judgments—Discharge.*—By maturing pre-existing provable debt of bankrupt into judgment, the form and remedy are changed. The debt remains the same and provable in bankruptcy. Hence, under § 5119, U. S. R. Statutes, the bankrupt is released from such judgment by his discharge.

3. IDEM—*Merger.*—Under the bankrupt act, the theory that the debt is merged in the judgment, has no applicability.

4. IDEM—*After-acquired lands.*—Judgments matured against bankrupt after his adjudication on pre-existing provable debts, are not liens on his after-acquired lands; but bankrupt is released by his discharge from them, as well as from the debts whereon they are founded.

5. IDEM—*Sales free of lien.*—Bankrupt court controls property of bankrupt; though encumbered by liens, may bring the lien-holders into court; sell the property free of liens, and distribute the proceeds according to priorities.

6. IDEM—*Case at bar.*—In 1868, H L M was adjudicated a bankrupt. His land was sold by decree of bankrupt court, free of liens, and purchased by himself, and conveyed to him by his assignees. Later, he sold it to J H M, who conveyed it in trust to secure debt to B. Under this trust, it was sold and purchased by B. In 1879, C brought creditor's bill to subject the land in B's hands to liens of judgments recovered against H L M, after his adjudication as bankrupt on pre-existing provable debts.

HELD:

    1. The judgments were released by H L M's discharge, and are not liens on the land in B's hands.

2. B is entitled to defend his own title by defending that of his vendor, which can be done only by setting up his discharge in bankruptcy and his release from the debts evidenced by the judgments.

Appeal of Joseph D. Blair from decree of circuit court of Pittsylvania county, rendered April 29th, 1881, in the consolidated causes of Jesse Carter, for, &c. v. Joseph D. Blair, &c., the Southern Fertilizing Company v. John H. Muse, &c., and Joseph D. Blair v. Skinner & Co.

Opinion states the case.

*Carrington & Fitzhugh, Cabell, Peatross & Harris,* for the appellant.

*Jos. Christian, Treadway & Scruggs, J. L. Treadway,* for the appellees.

LACY, J., delivered the opinion of the court.

On the 6th day of February, 1868, Henry L. Muse filed his petition in bankruptcy in the United States court for the eastern district of Virginia, and was on that day adjudged a bankrupt. He surrendered in the said bankrupt proceedings a tract of land situated in Pittsylvania county, containing one thousand and fifty-nine acres. Upon the petition of lien creditors, an account was taken and report made of liens by a commissioner of the bankrupt court, which was returned to and approved by the court on the 24th day of November, 1871. In the meantime, on the 6th of September, 1869, the said land was sold, by order of the said court, and purchased by the said Henry L. Muse, the bankrupt, at the price of $2,860. The sale was confirmed by the court, and the assignees ordered to convey the said land to the purchaser upon payment, in full, of the purchase money, which was done accordingly on the 13th of Decem-

ber, 1871. On the 2d day of May, 1871, Henry L. Muse sold this land to John H. Muse for the sum of $3,500, and John H. Muse conveyed the same to a trustee to secure a debt due the appellant, Blair, on the 19th day of February, 1872.

On the 30th day of December, 1875, John H. Muse made another deed conveying the same land in trust to secure a debt due the appellees, Skinner & Co., of $4,000. On the 29th of April, 1876, John M. Hutchings, the trustee in the deed of February 19th, 1872, to secure the Blair debt, sold the same, and Blair became the purchaser at the sum of $4,077.15; $1,668.08, the amount then of the Blair debt, in cash, and the residue, $2,409.07, on a credit until January 1st, following. And on June 27th, 1876, the trustee conveyed the land to Blair, reserving a lien for the unpaid purchase money.

On the 13th of May, 1876, the Southern Fertilizer Company filed a bill to subject the land of J. H. Muse to the payment of its judgment against him for $605, recovered February 27th, 1875, recorded March 13th, 1876—Blair's deed was the first, Skinner & Co.'s deed second, and the judgment of this Fertilizer Company third in priority. And the court, on the 21st of February, 1877, by decree entered therein, ordered the money in the hands of Blair still due to be collected by Hutchings, the trustee, and to be paid to Skinner & Co. It appears that no steps were taken under this decree, the parties agreeing to wait until the expiration of two years, during which the Fertilizer Company might apply for an appeal from the said decree. In the meantime, on the 8th of April, 1879, Jesse Carter filed his creditor's bill against Blair, which he had been threatening.

The object of this suit was to subject the land in the hands of Blair to the payment of a judgment, recovered against Henry L. Muse and others at the March term, 1869, of the county court of said county of Pittsylvania, for $1,000.

Blair, now threatened as to the title to his land, on the 20th of April, 1880, filed his bill against Hutchings, trustee, and Skinner & Co., to enjoin Hutchings from collecting of him the $2,409.07 due for his purchase of the said land, and from paying it over to Skinner & Co. until the court should settle the question whether there were liens on his land prior to that of Skinner & Co., and sufficient to absorb the purchase money due by him. On the 4th of May, 1880, after taking accounts of the liens, the three causes named aboved were consolidated and heard together.

The accounts being taken and report made, disclosed three judgments against Henry L. Muse—one in favor of J. M. Johnston for $500, recovered June 5, 1868; one in favor of English for $1,400, recovered 7th November, 1868, recorded November 23, 1868; one in favor of Charles Powell (which had been paid by Jessie Carter as security for Muse) for $1,000, recovered March, 1869, recorded March 23, 1869.

All of these judgments were obtained in suits instituted after February 6, 1868, at which time Henry L. Muse had been adjudged a bankrupt, and were rendered for debts he owed before he became a bankrupt, and before he obtained his discharge. Blair filed his answer, and stated his purchase from the trustee, the bankruptcy of H. L. Muse, the sale of the land by the district court free of liens and free from the claims of all creditors whose debts are made provable against his estate which existed on the 6th day of February, 1868, excepting such debts, if any, as are excepted from the operations of a discharge in bankruptcy; that all the said judgments were obtained upon debts which existed prior to the adjudication in bankruptcy, and were rendered after said adjudication and before the bankrupt could reasonably obtain his discharge.

At the April term, 1881, the report of the commissioner having been filed setting up these several judgments as liens

upon the lands of Henry L. Muse in the hands of Blair, the court entered a decree confirming this report, and providing for a sale of the land, unless Blair, or some one for him, should pay the said judgments within thirty days. From this decree Blair appealed, and assigned as error the action of the court in holding these judgments liens on his land, which had been discharged by the certificate of discharge of the bankrupt, and because each of the said judgments had been barred by the statute of limitations.

It is admitted by the appellant that the $2,409.07, now unpaid, is due by Blair; that it is a part of the purchase money for Blair's land, and is payable to the creditor who holds the prior lien. There is no objection on the part of Blair to pay this money; he admits that it is due, but claims that it is the measure of his liability, and submits to the court the question as to the direction in which it shall go. The circuit court decided that inasmuch as the land in the hands of Blair was held liable to pay the judgments above-mentioned, it would be inequitable to require Blair to pay the purchase money to Skinner & Co., as had been before ordered, and that Blair was entitled to use the same to pay off the judgments, and revoked the decree of the February term, 1877. The effect of which decision was for Blair to lose his debt of $1,668.08, as the judgments, aggregating $4,922.78, would absorb the entire value of the land; as to Skinner & Co., by the said decree they lost their debt of $4,000; as to the judgment creditors above named, they obtained the entire proceeds of the land bought by Blair. Blair, having obtained the appeal from the decree, Skinner & Co. have, as appellees, assigned errors here looking to the preservation of their interests stated above. Blair appeared in this court, by counsel, on the 3d of December, and dismissed his appeal; subsequently Skinner & Co. made a motion in this court to reinstate the appeal, which was docketed and notice given to Blair for the ——— day of this term, when

Blair appeared, by counsel, and consented to reinstate the cause, and the same was done upon the motion of Skinner & Co.

Upon the argument here, counsel representing Skinner & Co. and the judgment creditors, all the appellees, have moved the court to dismiss the appeal as to the judgment creditors, Carter & English, &c., and allow a hearing only on the appeal as between Blair and Skinner & Co., and not as between Blair and the other appellees, upon the ground that Blair having dismissed the appeal, and it never having been reinstated as to the appellees, Carter & English, it must stand dismissed as to them.

It would be impossible in the first place to consider the case in any such aspect; if the purchase money which Blair owes is left to go, as by the decree complained of it is ordered, to the judgment creditors, the whole fund is absorbed by them, and there is nothing left for Skinner & Co., as it will be remembered Blair's lien on the land was superior to that of Skinner & Co.

But an inspection of the records of this court shows that while the cause was reinstated upon the motion of Skinner & Co., it was reinstated as a cause in its entirety, and not solely as to Skinner & Co. And the motion to dismiss the appeal upon that ground must be overruled.

There is, indeed, but one question in this cause, and in that surely Skinner & Co., and the judgment creditors can have no common interest. For that question is: Does the money which Blair agreed to pay for this land go to the judgment creditors, or to Skinner & Co., by reason of their trust deed? If it goes to the judgment creditors because their liens are prior to Blair's, they are likewise in that case prior to Skinner & Co. And if the liens of the judgments do not attach to the land in the hands of Blair, then Skinner & Co. will in that case be entitled to what is not necessary to pay the debt of Blair, which is superior to that of Skinner

& Co.; and in that event the judgment creditors, the appellees, Carter & English, receive nothing. So it is clear that the cause could not be heard as to Blair, and Skinner & Co., without being also heard as to the appellees, Carter & English; and it is equally clear that said appellees, Carter & English, on the one hand, and Skinner & Co. on the other, can have no common interest in the cause.

The judgments having been obtained after the adjudication of bankruptcy of Henry L. Muse, and before his discharge, and upon debts existing prior to the adjudication of bankruptcy, which were provable under the bankrupt act, were the judgments provable under the bankrupt act and so discharged by the subsequent discharge of the bankrupt? Upon the correct answer to this question this case must turn. For the joint contention of Skinner & Co., and of the judgment creditors, Carter & English, that Blair, having bought this land for $4,077.15, with a prior lien on it as to Skinner & Co., of $1,668.08, can be held to pay judgment liens, existing prior to his purchase, of $4,922.98, and a trust deed lien subsequent to his own of $2,409.07, aggregating $7,331.85, can find no sanction in any court of justice.

The decree of February, 1877, has been set aside, and the right of Blair to apply the proceeds in his hands to the satisfaction of prior liens has been recognized, and the trustee enjoined and restrained from paying the purchase money when collected to the satisfaction of the Skinner & Co. debt, and the said proceeds have been decreed to be paid in satisfaction of the judgments obtained since the adjudication in bankruptcy.

The grounds upon which these judgments are held to be liens upon the after-acquired lands of the discharged bankrupt is, that the original debts were merged in the judgments, and the judgments being new debts, and subsequent to the adjudication of bankruptcy, were not provable under the bankrupt act, and not affected by the discharge of the

bankrupt. With regard to this question, we may say that the object of the bankrupt act was to discharge a debtor from all pre-existing debts subject to its operation. If we admit the principle that one debt which has been matured to judgment before adjudication is barred by the discharge, while another which is so matured after adjudication is not so barred, we thus admit a principle which would concede to the State court the right to disregard a law of congress, passed in accordance with the authority of the constitution of the United States. Section 5106 of the revised statutes of the United States provides, as follows :

" No creditor whose debt is provable shall be allowed to prosecute to final judgment any suit at law, or in equity therefor, against the bankrupt until the question of the debtor's discharge has been determined." Upon the application of the bankrupt all proceedings were to be stayed ; and it was further provided that, by leave of the court in bankruptcy, the suit might go on, in order to ascertain the amount which ought to be proved in bankruptcy.

The section 5119 provides that : " A discharge in bankruptcy duly granted shall, subject to the limitations imposed by the two preceding sections, release the bankrupt from all debts, claims, liabilities, and demands which were or *might have been proved against* his estate in bankruptcy." Can it be claimed that this general and comprehensive language does not include both illustrations stated above ? If the debt matured to judgment after the adjudication, cannot for that reason be proved, yet it must be admitted that it *might have been proved;* and if so, it must be affected by the discharge under the plain terms of the law. It is stated in argument that this question has been variously decided in the different courts of this country, and a somewhat careful inspection of the decisions upon this point will show that this is entirely true ; one court holding as against the creditor, that by maturing his

debt to judgment after adjudication, he lost all right to prove his debt. Neither the debt nor the judgment are provable. The debt is merged in the judgment, and the judgment did not exist at the time of the adjudication of bankruptcy. *In re Williams*, 2 Bank. Register, 79; *Bradford* v. *Rice*, 102 Mass. 472; *in re Gallison et al.*, 5 B. R. 353.

But this is not sufficient for the view contended for, if it be true, as so stated, that neither the debt nor the judgment can be proved, yet it could have been proved, and so is brought within the terms of the law.

Again, it has been held that it is not the judgment, but the debt as it existed at the filing of the petition, that is provable. *In re Vickens*, 3 B. R. 171; *in re Brown*, 3 B. R. 145.

And again, the debt as it stood at the time of the filing of the petition, is merged in the judgment, and the judgment must be proved. The judgment must be proved, not because it existed at a proper time, but because the debt constituting the foundation did exist at that time. *In re Crawford*, 3 B. R. 171; *in re Stevens*, 4 B. R. 122.

It is clear upon an examination of the cases that the result of the decisions upon the question as to whether a judgment obtained after adjudication upon a pre-existing debt is, that a debt upon which a judgment has been rendered since the commencement of proceedings in bankruptcy *must be proved*. The debt is not extinguished. The instrument, contract or obligation, upon which the debt arose, is extinguished, but not the debt. The debt remains. If this were not so the judgment would destroy itself by extinguishing the very foundation upon which it is built. The debt was founded upon contract; it is now founded upon judgment, but it is nevertheless the same debt. A judgment operates to extinguish a debt only

when it produces the fruits of a judgment. It operates as a change of remedy merely. It is a security of a higher nature. It is still only a security for the original cause of action.

The theory that the debt is so merged in the judgment as to be extinguished has no applicability under the bankrupt act. *In re Crawford*, 3 B. R. 171; *in re Vickens*, 3 B. R. 171; *in re Brown*, 3 B. R. 145; Freeman on Judgments, § 245.

But these cases proceed upon a consideration of the rights of the creditor in his steps toward the assets of the debtor in the hands of his assignee in bankruptcy, and have but little application to the property of the bankrupt afterwards acquired, as we shall proceed to show. The property of the bankrupt all passes to the assignee, which he has at the filing of his petition, and it is administered by the national courts, and no lien can be acquired thereon or enforced by any proceeding in a State court commenced after the petition is filed. *In re Wynne*, 4 B. R. 5.

The bankrupt court has been held to have control of the property of the bankrupt although encumbered by liens, and may bring the lien holders into court, sell the property free from lien or encumbrance, and in that case the lien holders are protected by a proper distribution of the proceeds. *In re Mebane*, 3 B. R. 91; *in re McClellan*, 1 B. R. 91. A secured creditor does not have absolutely the election to stand outside of the operation of the bankrupt act. *Mackson* v. *Heany*, 4 B. R. 169; *Bromley* v. *Smith*, 5 B. R. 125; *in re Kahley*, 4 B. R. 124.

When the estate of the bankrupt, however, has been administered by the bankrupt court, and the bankrupt duly discharged, that discharge is a bar to all debts which existed before adjudication, which were proved, or which might have been proved. And it cannot be impeached in

a State court, for any cause which would have prevented the granting of it under the twenty-ninth section, as would have been sufficient for annulling it under the thirty-fourth section. Proceedings in bankruptcy are statutory proceedings. The powers exercised, and the remedies provided, are given by statute. The impeaching tribunal is specified, and this designation, according to well established principles of interpretation, forms a part of the remedy and excludes all others. The authority of congress over the subject of bankruptcy being paramount to State authority, when it has provided a mode of dealing with a bankrupt's estate, that mode can only be pursued; and it would be an infringement of the paramount law if State courts should adopt another and a different mode. There is no distinction between actions brought before the debtor petitions to be adjudged a bankrupt and those brought afterwards. The authority of congress over the subject in both cases is the same. *Corey* v. *Ripley,* 4 B. R. 163; 57 Me. 69; *Oakes* v. *Parish,* 46 Ala.

The discharge in bankruptcy is a bar to the maintenance of any action in a State court for a prior indebtedness, unless the same is beyond the operation of the bankrupt act by its terms. If, after the institution of bankruptcy proceedings in bankruptcy, judgment is recovered upon a debt provable under those proceedings, it will be released by a discharge in bankruptcy; under the plain terms of section 5119, it is a debt which was proved, and is released by the act. In the case of *Jeffress* v. *Clark,* decided by this court, but not reported, this court said upon this question : " If the lands were purchased by Harrison individually, after his *status* as a bankrupt was fixed by the filing of his petition, followed by the adjudication of bankruptcy, and discharge from his indebtedness, of course the lien of the plaintiff's judgment did not attach to the lands and they were not bound for its payment."

No lien or interest in the estate can be acquired by any proceedings instituted in another court after the filing of the petition. The debt, like the property, passes into the bankrupt court, and the debt is paid in whole or in part, without any reference to its supposed change of status. But in no event can this lien be held to attach to, or in any wise affect the after-acquired property of the bankrupt, upon the ground that it is a new debt. It is the same old debt, and is released by the discharge against the bankrupt. But it is contended here in this case that, although this may be so, the purchaser of the lands afterwards acquired by the bankrupt, after several successive alienations, cannot defend his title by setting up this defence. Why not? He holds only the title which his vendor had. The vendor's title becomes his. Without it he has nothing. He can only defend his own title by defending that of his vendor. If the judgment had been paid, and was, nevertheless, sought to be enforced against the judgment debtor's lands, in his hands, might he not show it, and if it had been paid by the original judgment debtor, might he not show it to protect himself against the debt? The plea of bankruptcy is a personal plea; so is the plea of payment. If it should be held, as claimed by the appellees, the plea of bankruptcy would bar the debt only while the property of the bankrupt was held by him, and the lien to be recovered as against his alienees. But this is not so. The debt, however evidenced, is *released* by the discharge; and can never after be asserted against the bankrupt, nor against his after-acquired property in his own hands, nor in the hands of others.

This being so, then it follows that the circuit court erred in holding that these judgments were liens upon the lands of Blair, the purchaser. The judgments in question are released and forever discharged; but the appellant, Blair,

will be compelled to pay the residue of the purchase money due by him on his purchase of the lands—$2,409.07—which should be paid to the appellees—Skinner & Company. The bill of Carter and others must be dismissed, and the said decree of the circuit court must be reversed and annulled.

DECREE REVERSED.